IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

STEVEN M. LAUER d/b/a
LAUER CUSTOM WEAPONRY,

        Plaintiff & Counter-Defendant      OPINION AND ORDER

v.

                                                           17-cv-655-wmc

NIC INDUSTRIES, INC.,

        Defendant & Counterclaimant.

---

Steven Lauer d/b/a Lauer Custom Weaponry and NIC Industries, Inc. are competitors in the firearm finishing market.[1] Lauer is suing NIC in this lawsuit for false advertising under the Lanham Act and Wisconsin law. Following a stipulation by the parties, Lauer's remaining Lanham Act claims arise out of alleged statements that NIC made about the Cerakote Elite Series coating, and NIC's remaining Lanham Act counterclaim concerns alleged statements by Lauer concerning the post-UV exposure of the Cerakote Black product. (*See* dkt. #42 at 1-2.) This opinion will address and grant in part NIC's motion to strike the expert report of Brian R. Smith. (Dkt. #26.)[2]

---

[1] While the parties do not explain what "firearm finishes" are, the court generally understands they are protective coatings designed for and applied to firearms.

[2] In its motion, NIC requested that the court strike Smith's report or prevent him from supplementing it. (Dkt. #26.) Judge Crocker previously addressed the second half of the motion, granting the motion to preclude supplementation. (*See* dkt. #52.) Because the parties agreed to dismiss with prejudice NIC's Lanham Act claims arising out of the allegation that Lauer relabels and repackages Sherwin-Williams products, the court need not address NIC's request to strike Lauer's rebuttal expert report, which can be summarized as promising to "offer expert testimony to explain why defendant's product is bad and his product is good." (*See* dkt. #35; *see also* dkt. ##36, 40.) Likewise, the court will focus its analysis on the portions of Smith's expert report relating to remaining claims.

## BACKGROUND[3]

Lauer and NIC are competitors in the firearm finishing market. Before filing suit, Lauer sent a cease and desist letter to NIC in May 2017, demanding NIC "immediately cease and desist making false claims" that overstate the performance characteristics of its products. (Cease & Desist Letter (dkt. #28-2) 1.) In particular, the letter identified two representations about the Cerakote Elite Series coating that Lauer claimed "[i]ndependent testing" had shown to be inaccurate: that it "withstands (i) 8,000 Taber abrasion wear cycles (ASTM D4060); and (ii) 3,000 hours of corrosion resistance (ASTM B117)." (*Id.*) According to Lauer's letter, independent testing showed that the coating instead "withstands: (i) 4,000 taber abrasion wear cycles . . .; and (ii) 185 hours of corrosion resistance." (*Id.*) When NIC continued to claim its products achieved greater performance, this suit resulted.

The court's preliminary pretrial conference order in this case required plaintiff to disclose its experts on or before February 9, 2018, and for the disclosures to comply with Rule 26(a)(2).[4] (Prelim. Pretrial Conference Order (dkt. #9) 2.) The order also provided that supplementation under Rule 26(e) must be: "limited to matters raised in an expert's first report"; "in writing"; and "served no later than five calendar days before the expert's deposition, or before the general discovery cutoff if no one deposes the expert." (*Id.*)

---

[3] Facts are drawn from defendant's memorandum supporting its motion to strike or exclude supplementation of plaintiff's expert report (dkt. #27), unless otherwise noted.

[4] Defendant's expert disclosures were initially due on March 23, 2018. (Prelim. Pretrial Conference Order (dkt. #9) 2.) In light of defendant's pending motion, however, the court stayed that deadline until the court ruled. (Mar. 23, 2018 Order (dkt. #31).)

<mark>2</mark>

Lauer later produced a timely expert report by Brian R. Smith, the vice president of technology and business development for Assured Testing Services. (Smith Rpt. (dkt. #28-1) 1.) Assured Testing Services is an independent laboratory that "specializ[es] in the testing of coatings and their physical properties, corrosion resistance, weathering, and chemical resistance performance." (*Id.*) Smith was retained to and did opine in writing about the accuracy of four of NIC's claims concerning the Cerakote H and Cerakote Elite Series coatings.

OPINION

Rule 26(a)(2)(B) details what must be included in an expert's written report: "a complete statement of all opinions . . . and the basis and reasons for them"; "the facts or data considered"; summary or supporting exhibits; the expert's qualifications, including publications from the past decade and prior expert experience in the past four years; and a compensation disclosure. Fed. R. Civ. P. 26(a)(2)(B). "Rule 26 is designed to avoid surprise and give the opposing party a full opportunity to evaluate the expert's methodology and conclusions and to respond appropriately." *Gicla v. U.S.*, 572 F.3d 407, 411 (7th Cir. 2009). If violated, exclusion under Rule 37 "is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *Salgado by Salgado v. General Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998) (citing *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996)). That said, *Salgado* recognizes that "less severe" sanctions are available, such as restricting an expert to testifying to the incomplete opinions contained in his report. *Id.* at 741 n.6.

Defendant argues that the Smith Report should be struck under Rule 37 on three

3

grounds: (1) it did not attach the exhibits on which Smith purports to rely; (2) the Smith Report does not support, but rather undermines plaintiff's claims; and (3) the Smith Report is a preliminary, not a final, report. Defendant's first argument requires little discussion. (*See* Pl.'s Opp'n (dkt. #37) at 3.) While this failure is a literal violation of Rule 26(a)(2)(B), defendant "readily" determined that the report was based on previous testing, the reports of which plaintiff had already produced in discovery. (*See* Mot. Strike Br. (dkt. #27) 3.) Defendant having been prejudiced in no discernable way by this technical violation, striking the report would obviously be too harsh a sanction.

Next, defendant argues that the Smith Report "undermines" plaintiff's claims. More specifically, defendant argues the Smith Report is inadequately or improperly supported, "predicated upon assumptions and unknowns," and relies on unreliable prior testing. (*Id.* at 9.) Most of these concerns were obviated by the parties' stipulation to dismiss certain claims with prejudice.[5] (*See* Stipulation (dkt. #42) 1.) As to the remaining claims, Smith opines that:

- "To [his] knowledge based on the reports reviewed no samples were tested to 8,000 cycles therefore it is not possible to address the claim given the data available from previous testing."

- The earlier testing results are "not directly comparable to results obtained by Assured or those posted on NIC Industries' website."

- "Based on the Assured Testing Services' TR 14006A test results . . . where all samples exhibited some rust at approximately 500 hrs, Product '1' or '2' samples are not compliant to the 3,000 hr claim of withstanding ASTM B117 Salt Spray without red rust."

---

[5] For instance, defendant's concerns about Smith's assumption that the samples remained the same across earlier testing are not asserted in the two remaining, admissible relevant portions of Smith's report.

4

- "Regarding the results in the Touchstone Testing Laboratory LLC (TTL) report 20284, . . . the (apparent) Cerakote Elite samples are not compliant with the 3,000 hr claim of withstanding ASTM B117 Salt Spray without red rust."

- "Additional testing is being conducted" concerning the two remaining challenged statements.

(Smith Rpt. (dkt. #28-1) 4-5.)

Nevertheless, defendant argues that Smith's plan for *additional* testing, combined with his criticisms of the prior testing, "impl[ies] that his testing would cure the flaws in the earlier reports" and that the Smith Report is based on inadmissible hearsay. (Def.'s Reply (dkt. #40) 6.) Plaintiff responds that defendant's concerns as to inadmissible hearsay would only apply "to the extent that Lauer does not call representatives of the underlying reporting companies as fact witnesses to confirm the validity of what they reported, thereby confirming the veracity of the reports relied upon by Smith." (Pl.'s Opp'n (dkt. #37) 8.) Rule 703 permits an expert to rely on inadmissible evidence "[i]f of a type reasonably relied upon by experts in the particular field," and to render appropriate opinions that may be helpful to the jury. Fed. R. Evid. 703. While Smith obviously cannot act as a mouthpiece for inadmissible hearsay, he purports to rely on the prior reports in rendering his opinions in this case. (*See* Smith Rpt. (dkt. #28-1) 4-5.) Plaintiff represents that it is his intention to call the testers to testify at trial. (Pl.'s Opp'n (dkt. #37) 8-9.) Whether or not those who conducted the tests are called to testify about the actual results, Smith may testify as to the relevance of those tests to the matter in dispute, including that there is a lack of data for an expert to opine or that there is no comparison.

Expert testimony must satisfy the following three-part test to be admissible:

[1] the witness must be qualified "as an expert by knowledge,

> skill, experience, training or education," Fed. R. Evid. 702; [2] the expert's reasoning or methodology underlying the testimony must be scientifically reliable, *Daubert* [*v. Merrill Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 592-93 (1993)]; and [3] the testimony must assist the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702.

*Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). Here, there is no argument that Smith is not qualified, by his education, training, experience, or knowledge. Likewise, there is no argument that the few opinions he offers are unreliable. Finally, his testimony may assist the jury in understanding the testing performed.

In fairness defendant does object to the "preliminary" nature of the Smith Report -- itself titled "Interim Report TR21596" -- which advises that "[a]dditional testing is being conducted," projecting completion "on or about 30 March 2018" or "on or about 16 July 2018," and promising supplementation "as appropriate when the testing is complete." (Smith Rpt. (dkt. #28-1) 5.) Plaintiff argues that the report's "indication that additional testing is ongoing" and the future supplementation are permissible because: (1) the report "identifies the methodology applicable with that testing, as well as the reasoning for it"; (2) the "supplementation will be provided a soon as the additional tests are completed"; and (3) defendant "is not harmed" by this proposed methodology. (Pl.'s Opp'n (dkt. #37) 5, 7.) The parties' dispute is pointless since this court has already precluded supplementation.

Rule 26(a)(2) requires "a *complete* statement of *all* opinions." Fed. R. Civ. P. 26(a)(2) (emphasis added). This means that the expert's report "must include the substance of the testimony which an expert is expected to give on direct examination" and cannot "be sketchy, vague or preliminary in nature." *Salgado*, 150 F.3d at 741 n.6 (citing

Fed. R. Civ. P. 26 Advisory Committee's note). Pointing to future testing -- the results of which are unknown -- by definition cannot provide "a *complete* statement of *all* opinions." Further, plaintiff's proposed supplementation is inappropriate and does not solve this problem because allowing him to "continue to run tests and generate new test results after his deadline . . . would force defendant's expert(s) to shoot at a moving target. This is the sort of uncertainty -- which could also be characterized as sandbagging -- that Rule 26(a)(2) and this court's preliminary pretrial conference order are designed to prevent." (Apr. 27, 2018 Order (dkt. #52).)

While plaintiff contends that the remaining tests "are time-intensive" and that "[s]upplementation will occur well prior to the close of discovery and will not wreak havoc upon the Court's schedule" (Pl.'s Opp'n (dkt. #37) 7), he fails to establish justification or harmlessness for the delay. Plaintiff cannot show justification: he "received all the time he asked for to conduct testing and report the results (which logically could -- should have -- been done before he filed his lawsuit last summer)." (Apr. 27, 2018 Order (dkt. #52).) As to harmlessness, the court has already precluded plaintiff from supplementing his expert's report because permitting him to do so "would force defendant's expert(s) to shoot at a moving target." (*See id.*) However, striking what remains of the Smith report is unnecessary. *See Salgado*, 150 F.3d at 741 at n.6 (recognizing that "less severe" sanctions are available, such as restricting an expert to testifying to the incomplete opinions contained in his report). Smith may testify to the limited opinions contained in his report in its current state. He will not be permitted to testify to other opinions, including any supplemental testing he may have conducted after his report or the results of those tests.

ORDER

IT IS ORDERED that:

1) Defendant's motion to strike the Smith Report (dkt. #26) is GRANTED IN PART AND DENIED IN PART as set forth above.

2) Defendant may disclose its rebuttal expert and serve the accompanying report, if any, within thirty (30) days.

3) Consistent with the parties' stipulation (dkt. #51), within seven days, the parties shall advise the court when defendant's summary judgment reply is due.

Entered this 17th day of May, 2018.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge